## ALMIRA CO v GEREN

Ohio Appeals, 2nd Dist, Franklin Co

No 2887. Decided April 24, 1939

Chapin B. Beem, Columbus, for plaintiff-appellee.

Carrington T. Marshall, Columbus; H. J. Gardiner, Columbus, for defendant-appellant.

(GUERNSEY, J, of the Third Appellate District, sitting by designation.)

## OPINION

By BARNES, J.

The above entitled cause is now being determined de novo by reason of defendant's appeal on questions of law and fact from the judgment of the Court of Common Pleas of Franklin County, Ohio.

The action is one for forfeiture under a land contract.

On June 20, 1926, the land contract was entered into between Ross W. Cheek and Lester E. Cheek as first parties and James R. Geren as second party.

The contract involved the sale of a large tract of valuable property in the University district calling for a payment of $73,200.00 in installments as follows:

$1000.00 in the execution of the contract;

$7200.00 on or before July 1, 1926;

$5000.00 on or before July 1, 1928; and the balance of $60,000 on or before July 1, 1931, all deferred payments to bear interest at 6% per annum, interest payable semiannually on January 1st and July 1st of each year. As a further consideration the second party was to pay all taxes and special assessments of every kind falling due after June 1926.

The second party was to have immediate possession of said premises on July 1st, 1926. The contract contained the following forfeiture clause:

."On default of second party in the payment of any one of the above installments of the purchase money, or in the performance of any of the covenants in this contract, for a period of thirty days after it becomes due, first party reserves the right to declare this contract null and void without notice thereof to second party and without demand of payment on him and in that event, first party may re-enter and repossess the above described premises and he shall be seized thereof as of his first and former estate and all payments made hereunder by second party shall be retained by first party as rent for said premises and as liquidated damages for the breach of this contract, and on breach of any condition in this contract by second party he shall immediately surrender said premises and deliver possession thereof to said first party and shall vacate said premises or any part thereof without legal proceedings and without cost to first party."

The contract contained a further provision which counsel for defendant designates as an alternative provision and counsel for plaintiff merely an additonal provision which reads as follows:

"Or on default of second party to pay any of said installments or to pay any interest when due, first party, may at his option, on the first day of the month following said default or later, assume management and control of said property herein sold, and collect said rents and continue in force this contract and hold said income from said property in trust to pay and discharge the obligations of second party under this contract. First party may continue such management and control until second party shall have paid his obligation due under this contract, and performed all other covenants and agreements to be kept and performed by second party under the terms of this contract, and then the management and control of said property shall be transferred to second party."

On the 18th day of May, 1932, Ross W. Cheek and Lester E. Cheek sold and conveyed the real estate described in the contract by warranty deed to the plaintiff, The Almira Company, a corporation, subject to the conditions and provisions of said contract.

The Almira Company was organized

and officered by the Cheek Brothers.

At a later date an undivided one-half of the real estate in question was conveyed by duly executed deed to the Melern Company, a corporation. The president of this latter company was Lester E. Cheek.

No question of bono fide holders for value is made or claimed. It is conceded that the rights of the plaintiff company and also of the Melern Company are the same as though they were the original parties of the first part.

Defendant Geren duly paid all installments and interest up to July 1st, 1930. Between July 1st, 1930, and July 1st, 1931, no interest had been paid. On July 1st, 1931, the last installment of $60,000.00 plus interest and taxes was due and the defendant was then in default and remained in default for some time thereafter. On July 13, 1931, defendant Geren turned over to plaintiff 500 shares of the common stock of the American Hide and Leather Company, which at the time turned over was selling on the market at approximately $7.50 per share.

One of the controversies in this case is whether or not this stock was turned over to the Cheek Brokers as payment of defaulted interest and taxes or, as Mr. Geren states, as evidence of good faith. During the latter half of the year 1931 Mr. Geren paid on defaulted interest the sum of $1200 00, the dates and amounts of said payments being as follows:

September, 1931 _____$275.00
October, 1931 _____ 325.00
November, 1931 _____ 300.00
December, 1931 _____ 300.00
No further payments were made by the defendant at any time. On February 1st, 1932, defendant in his answer makes the claim a contract was entered into between Cheek Brothers and himself through which the Cheeks agreed to exercise one of the options of said contract, to waive their right of forfeiture and avoidance of said contract and elected to continue the said contract in force as provided by one of the terms of said contract.

Defendant further avers that on this February 1st, 1932, as a further consideration for said agreement to continue said contract in force and as evidence of good faith and to secure the collection of said rentals this defendant deposited with said Ross W. Cheek on said date 500 shares of the common stock of the American Hide and Leather Company which said Ross W. Cheek did then agree to hold in trust as such collateral security and as evidence of good faith and did agree to keep the same and return to this defendant upon demand or upon determination or cancellation of said contract by mutual agreement.

The answer contains the further averment that on May 4, 1932, defendant paid to plaintiff the further sum of $225.00 to apply upon said contract, said sum being in addition to the rentals and revenues produced by the property.

This averment of the answer is denied in the reply and no evidence was introduced relative thereto so that this item goes out for failure of proof. The evidence discloses that plaintiff was very active in its efforts to collect the defaulted payment of interest and taxes, and some of this correspondence is presented in the evidence as exhibits.

One of the letters written by plaintiff presents a complaint that defendant was receiving all the income from the properties and yet was making no payments whatever. It is conceded that on February 1st, 1932, arrangements were made by which plaintiff would receive all the rents and income from the property. Thereafter several of the tenants paid direct to Cheek Brothers. One of the tenants, an oil company, being one of the largest accounts, paid direct to Mr. Geren, and he in turn would endorse and send to Cheek Brothers. This condition continued until June, 1934, at which time defendant Geren discontinued making remittances and thereupon plaintiff filed action on August 17, 1934.

It is the claim and contention of defendant that plaintiff, having acted under what he termed the alternative provisions of contract is forever barred

from bringing an action demanding forfeiture. In the brief of counsel it is admitted that this would be rather drastic and hence they say that defendant will be content to permit plaintiff to withdraw their election provided there is returned to them the 500 shares of stock heretofore referred to, and the $1200 cash paid during the last half of 1931.

There is no request in the answer for return of the $1200.00. The answer does ask for a return of the $225.00 allegedly paid on May 4, 1932, but this item is likewise eliminated for the reason that there is no evidence in support thereof.

The only remaining question left relates to the 500 shares of stock. We will now consider more in detail the surrounding circumstances attending the turning over of this stock. Under the pleadings there is a conflict in the date at which this stock was delivered. As heretofore stated defendant in his answer claims the delivery and transfer were made February 1, 1932, as an additional consideration for the agreement to continue said contract in force as evidence of good faith and to secure the collection of rentals, etc.

Defendant in his evidence under cross-examination makes the admission that said stock was delivered on the 13th day of July, 1931, and in explanation of the purpose for which it was delivered states that as evidence of good faith that he would continue interest payments.

It was claimed by plaintiff and conceded by defendant that at the time of transfer he was given a receipt for the stock. Ross Cheek, who handled the transaction, testifies that the receipt among other things contained the following provision, "Received 500 shares of the American Hide and Leather Company stock, the same to be sold within one week."

Demand for the receipt was made, defendant testifying that the same had been lost. Lester E. Cheek testified that he was present when the stock was delivered and that at that time Mr. Geren stated that it was street stock; that it

was payable to bearer; that no endorsement was necessary; that whoever held it owned it. A short time before this transaction Mr. Geren had written a letter to Cheek Brothers or plaintiff advising that his attorney was seeking to repossess this stock for him and that as soon as he got it the same would be sold and all default interest, etc., would be paid in full. Within a short period plaintiff again wrote him referring to his letter, Mr. Geren making reply in pencil on the original letter and therein stated that there had been some delay but "rest assured payment will be made to you including deferred interest." At a later date and after the stock had been delivered to plaintiff, Geren writes a letter to them inquiring as to whether or not the stock had been sold and for what amount.

We arrive at the same conclusion as did the trial court that ██ the greater weight of the evidence on this controverted question is with plaintiff; that the stock certificate was delivered to plaintiff to be sold and credited on defaulted interest and taxes.

Neither are we able to find that plaintiff and defendant on or about February 1, 1932, entered into a contract through which plaintiff was to exercise the alternative provision of the contract and waive right to forfeiture.

Counsel for defendant make the further claim that independent of contract plaintiffs by their conduct elected to proceed under the alternative provision and thereby as a matter of law waived the right to forfeiture. We do not think that the contract could be given such a construction.

Independent of what is spoken of as the alternative clause in the contract plaintiff would not be required to claim a forfeiture immediately when the right so to do presented itself. Even if the contract had not contained the alternative provision plaintiff could still have insisted that defendant perform and could have brought an action for a money judgment upon which execution might have issued and recovery

had, provided any property could be found belonging to the defendant, and through proper process the accruing rents on the premises might be decreed to plaintiff. Such a proceeding if had would not prevent a subsequent action for forfeiture unless all default were removed.

As we see it the only purpose of this so-called alternative clause by making specific provisions in case of default for plaintiff to assume management and control and collect rents and continue in force the contract, was to simplify the procedure in securing to plaintiff what could have been obtained independent of this clause. We hold that defendant is entitled to no relief relative to the 500 shares of stock.

A further question is raised relative to an action brought by plaintiff against the defendant on March 12, 1932, for the sum of $4483.20, being the amount of default, interest and taxes and for which amount plaintiff took default judgment.

On the record of the court no part of this amount has been paid but the same remains as a subsisting judgment against defendant. The claim is made that this judgment should be ordered cancelled and we concur in that conclusion. We do so on the authority set forth in 27 Ruling Case Law, p. 666, paragraph 429:

"And even though a judgment has been recovered against the purchaser for overdue purchase money, the subsequent termination of the contract by the vendor will relieve the purchaser from liability on the judgment."

Counsel for defendant in their brief urge that there should be no distinction between the judgment and other payments made or securities placed in the hands of the plaintiff after right of forfeiture had arisen. We think that this question is settled in the supplement of Ruling Case Law, Vol. 8, under Title, Vendors and Purchaser, Section 429,

"Check or Note Given in Lieu of Cash Deposit.—It has been held that where the vendee instead of making a cash deposit of a designated sum, as the first payment executes a note for that amount to the vendor and thereafter defaults in making an additional payment recovery may be had on the note since it stands in substitution of a cash deposit."

Entry may be drawn in this court the same as in the Common Pleas Court.

Costs will be adjudged against appellant.

HORNBECK, PJ, and GUERNSEY, J, concur.